**TURNER et al. v. DEMING et al.**

**No. 9175.**

United States Court of Appeals
District of Columbia.

Argued March 29, 1946.

Decided May 2, 1946.

Mr. George C. Gertman, of Washington, D. C., for appellants.

Mr. John U. Gardiner, of Washington, D. C., for appellees.

Before CLARK, WILBUR K. MILLER, and PRETTYMAN, Associate Justices.

WILBUR K. MILLER, Associate Justice.

C. Deming, who was the owner of the record title to an unimproved parcel of ground in the District of Columbia, died intestate in 1863. For many years thereafter his heirs exercised no dominion over the real estate and did not pay the taxes assessed against it. In 1903 the Commissioners of the District of Columbia sold the lot for the 1898 taxes and conveyed it to the purchaser, Michael I. Weller. Apparently Weller failed to pay other taxes which were delinquent at the time of his purchase, for later the Commissioners sold the lot for 1901 taxes and in 1904 conveyed it, pursuant to that sale, to Louisa J. Sanford. Mrs. Sanford paid the taxes regularly until her death in 1920. By her will she devised the parcel to her four children as tenants in common. Taxes were paid regularly through 1933 but, the 1934 taxes having become delinquent, the lot was sold by the Commissioners to satisfy that obligation and was conveyed by them in 1937 to E. N. Black.

The appellee, Marie McC. Deming, became the owner by grant from the heirs of C. Deming of the record title which the

latter had at the time of his death in 1863. The appellees, John R. Shields and Harvey L. Cobb, are the owners of the tax title which the Commissioners conveyed to Black in 1937.

The appellants are the grantees of such titles as were given by, and may have survived from, the Commissioners' conveyances to Weller in 1903 and to Mrs. Sanford in 1904.

This suit is a contest for the ownership of the lot between the owners of the Weller and Sanford tax titles (the appellants) and the owners of the Black tax title (the appellees). It is agreed by the parties, and we agree with them, that the appellees are the owners of the lot if the sale to E. N. Black by the Commissioners in 1937 was valid.

The position of the appellants is that the Black tax deed is void for the reason that the sale for the delinquent taxes for 1934, pursuant to which that deed was executed by the Commissioners, was based on an assessment of the lot in the name of Louisa J. Sanford as owner, when in fact she had died in 1920; and that her will under which the lot passed to her four children as tenants in common was probated in the District of Columbia in that year, thus giving the Assessor actual official notice of the new owners at that time. The appellants contend that, in such circumstances, realty cannot be assessed in the name of a deceased person.

So the question is, was the lot properly assessed in the name of Louisa J. Sanford in 1934? If it was, the Black tax deed is valid and the appellees prevail. If it was not, the Black tax deed is invalid, and the appellants are the owners of the lot.

Section 47—701 of the District of Columbia Code 1940 is as follows:

"All real property in the District of Columbia, except as hereinafter provided, shall be assessed in the name of the owner, or trustee or trustees of the owner thereof. All undivided real property of a deceased person may be assessed in the name of such deceased person until the same is divided, according to law, or has otherwise passed into the possession of some other person or persons; and all real property, the ownership of which is unknown, shall be assessed 'owner unknown.'"

■■■ We see no substance in the contention of the appellants that the property became "divided" when it passed to four tenants in common under the will of Louisa J. Sanford. That real estate is "undivided" when owned by two or more tenants in common is too well established to require the citation of authority.

As the property was, therefore, still undivided in 1934, it was properly assessed for that year in the name of Mrs. Sanford, unless it had then "otherwise passed into the possession of some other person or persons."

At the death of Louisa J. Sanford, necessarily and instantaneously the lot passed into the possession of her four children. Did it thereby pass into the possession of "some other person or persons" within the meaning of the statute? If it did, then it must be admitted that the Congress purported to be providing that, for a time and under certain circumstances, the real property which had been owned by a deceased person may be assessed in his name after his death; but that, in the same sentence the legislators really provided, by indirection, that it may never be assessed in the name of the former owner after his death. This is true, because if the statute means that the realty of a deceased person, so long as it remains undivided, may be assessed in the name of the deceased only until such time as it passes into the possession of some person or persons other than the deceased, it means also that there is never a time when undivided realty formerly owned by a deceased person can be assessed in his name. Possession of real estate cannot be held by one who is dead and, at the instant of death, possession passes to another or others.

■■■ We are unwilling to read the statute as being such an anomaly. Consequently we attribute a rational meaning to it and hold that its significance is as though it were worded thus:

"All undivided real property of the deceased person may be assessed in the name of such deceased person until the same is divided, according to law, or has otherwise

passed into the possession of some other person or persons, *other than by intestacy or the will itself.*"

We conclude, therefore, that at the death of Louisa J. Sanford when the lot passed into the possession of her four children, it did not thereby pass into the possession of "some other person or persons" within the meaning of the statute, and that it was properly assessed in Mrs. Sanford's name so long as it remained undivided in the hands of her four children.

Such an interpretation gives meaning and usefulness to the statute. It relieves the Assessor of the burden, which might become a heavy one, of attempting to ascertain the names and addresses of the heirs or devisees of deceased owners of real property. That the land may pass to tenants in common, as it did here, under a will which is a matter of record, would not always lighten the burden for the reason that often, as here, such property may vest in tenants in common under a residuary devise which affords the Assessor no clue as to the identity of the owners or the property.

Because of what we regard as the necessary and plain significance of the statute, we hold that the Black tax deed is valid. As this is the conclusion which was reached by the District Court, it follows that its judgment is affirmed.

Affirmed.