CCD–SAT, INC., et al., Appellants,

v.

Clarence T. PRATT, et al., Appellees.

No. 07–CV–1164.

District of Columbia Court of Appeals.

Submitted Feb. 18, 2009.
Decided May 28, 2009.

Darryl F. White, for appellants.

Jennifer Peru Gary and B. Michael Rauh, Washington, DC, for Clarence T. Pratt.

Before FISHER and THOMPSON, Associate Judges, and PRYOR, Senior Judge.

THOMPSON, Associate Judge:

Appellant CCD–SAT, Inc. ("CCD–SAT"), a Maryland corporation, challenges an order of the Superior Court quieting title to a parcel of real property in the District of Columbia (Lot 879 in Square 5214) in favor of appellee Clarence T. Pratt. CCD–SAT had purchased the property in 1988, but failed to pay property taxes on it. Pratt obtained a deed to the property through the tax sale process on March 10, 1997, having paid to the District of Columbia the delinquent property taxes, interest, and penalties then owing on the property. Subsequently—after CCD–SAT's sole director Carol C. Davis asserted that CCD–SAT continued to own the property—Pratt brought his action to quiet title. CCD–SAT responded by moving the court to set aside the tax deed on the ground that the District of Columbia failed to provide the statutorily-required

notice to CCD–SAT before deeding the property to Pratt. In an Order Denying Defendant's Motion to Set Aside Tax Deed dated July 23, 2007 ("Order"), the Superior Court ruled that no notice was required because, at the time when notice to CCD–SAT would otherwise have been due, the company was in default under Maryland law and its corporate status was forfeited. Given the particular facts of this case, we are constrained to disagree with the trial court's conclusion. Accordingly, we reverse and remand.

As recounted in the trial court's order, beginning in 1990, CCD–SAT failed to pay taxes on the property. Order at 2. In the ensuing years, CCD–SAT twice forfeited its corporate status, first for failure to file a personal property return and then for failure to pay a late filing penalty. *See also* MD.CODE ANN., CORPS. & ASS'NS § 3–503 (2007 Repl.) For over eleven years beginning on October 3, 1995, the company was continually in defunct status. Order at 2. Articles of Revival restoring CCD–SAT's corporate status were not filed until April 11, 2007. Order at 3.

The District first put the property up for tax sale in 1992. The District tax-sale statute law then in effect established several routes to a private sale of property on which taxes were overdue in the event that the property failed to sell at public auc-tion.[1] Whatever the route, D.C.Code § 47–1303.2(b)(1) (1997 Repl.) required the District, "[b]efore accepting offers on the bid off property for private sale," to "[s]end a final notice to the owner of the bid off property stating that the bid off property will be offered for private sale unless the bid off property is redeemed within 30 days after the date of the final notice by paying all taxes and assessments, including penalties, interest, costs, and charges against the bid off property." *See* 41 D.C.Reg. 1221 (March 11, 1994). The property in dispute here having remained unsold after several annual tax sales, the District transferred the property to Pratt via a private sale in 1997.

The District "can effectuate a 'valid conveyance of property for nonpayment of real estate taxes only by strict compliance with the tax sale statute and regulations.'" *Langon v. Reilly*, 802 A.2d 951, 953 (D.C.2002) (quoting *Boddie v. Robinson*, 430 A.2d 519, 522 (D.C.1981)); *see also Bembery v. District of Columbia*, 852 A.2d 935, 941 (D.C.2004) (explaining that, in disposing of property burdened by a delinquent tax obligation, the District must "provide notice that complies strictly with the requirements of applicable statutes and regulations, and that comports with the due process requirement that it be reasonably calculated to apprise inter-

---

1. The statute provided that in case the highest bid on any property at a public tax sale was not sufficient to meet the taxes, penalties, and costs owed on the property, the property was to be "bid off by the said Collector of Taxes" and, if within six months thereafter the property was not redeemed by the owner(s) or their legal representatives, the Mayor could "sell the property at … private sale and issue to any purchaser of such property a deed." D.C.Code § 47–1304 (1997 Repl.); *see also* D.C.Code § 47–847 (1997 Repl.). Section 47–1304 further provided that before the expiration of that additional time allowed for the redemption of bid off property, the Collector of Taxes could issue a certificate of sale, and that if the property was not redeemed by the owner within six months from the date of such certificate, "a deed shall be given by the Mayor of the District of Columbia, or his successors in office, to the legal holder of such certificate." *Id.* Additionally, D.C.Code § 47–1303.2(a) (1997 Repl.) provided that "[n]otwithstanding any other provision of law, the Mayor may sell at private sale real property that has been bid off in the name of the District at public tax sale for 2 consecutive years and that has not been redeemed by the owner within the redemption period provided by law."

ested parties of the imminent prospect of their loss of valuable property rights") (internal citation omitted). "Accordingly, if the District fails to comply in every respect with the statute and regulations, the sale is invalid and must be set aside." *Jones v. Thompson*, 953 A.2d 1121, 1125 (D.C.2008) (internal citation, quotation marks, and brackets omitted); *see also District of Columbia v. Mayhew*, 601 A.2d 37, 39 (D.C.1991). This court has "applied that strict rule to invalidate a tax sale where the District failed to provide notice of an expiring redemption period in strict accordance with applicable regulations." *Jones, supra*, 953 A.2d at 1125.[2]

During discovery in this case, the District, which had been joined as a defendant, was unable to produce a certified mail receipt or any other evidence that it actually sent CCD–SAT timely notice (or, indeed, any notice) of the sale of the property in dispute here and of the impending expiration of the redemption period. As a result, the trial court was "unable to determine whether the city complied with the statutes and regulations regarding notice" to CCD–SAT. Order at 4 n. 1; *cf. Jones*, 953 A.2d at 1126 (declining to infer that a certified mailing occurred for one tax sale property from the production of a certified mail green card relating to another property that was transferred at the same tax

sale, because "any such inference is simply too weak to establish strict compliance" and "was not significantly probative of whether the District strictly complied with its obligations") (citation and internal quotation marks omitted).

■ The trial court recognized that, as a matter of due process, an "owner is entitled to written notice as a constitutional precondition to safeguard [its] interest in the adversely affected property." Order at 4 (quoting *Langon, supra*, 802 A.2d at 953). The court also recognized that "corporations have due process rights ... just as a natural person does...." Order at 5. The court found, however, that CCD–SAT "effectively did not exist at the time of the 1997 sale to [Pratt]."[3] *Id.* The court concluded that "where the statutory requirement cannot be followed because ... the party to receive notice no longer exists, the court cannot find constitutional infirmity in the sale...." *Id.* The court found that the corporation CCD–SAT "had no due process rights [at the time the property was transferred to Pratt] because it was defunct." *Id.* at 7.

What the trial court's analysis does not take into account is that, under Maryland law (which governs CCD–SAT as a Maryland corporation), "[o]nce a corporation's

2. Pratt argues that because he "purchased the property at issue via *private sale* in 1997, long after CCD–SAT's failure to redeem the property at the prior tax sales, ... the issue of notice has no bearing on ... Pratt's lawful title in fee simple to the property at issue." Apparently, the basis of this argument is that the private sale provisions of D.C.Code § 47–1304 as in effect in 1997 did not contain the "after notice satisfying the requirements of due process" language found in the current version of section 47–1304. The argument fails, however, because it ignores D.C.Code § 47–1303.2(b)(1) (1997 Repl.) (currently codified as D.C.Code § 47–1303.02(b)(1) (2001)), which, as discussed *supra*, required the District to "[s]end a final notice to the

owner of the bid off property stating that the bid off property will be offered for private sale unless the bid off property is redeemed within 30 days after the date of the final notice by paying all taxes and assessments, including penalties, interest, costs, and charges against the bid off property."

3. *See* MD.CODE ANN., CORPS. & ASS'NS § 3–503; *see also Kroop & Kurland, P.A. v. Lambros*, 118 Md.App. 651, 703 A.2d 1287 (Md.1998) (when a corporation's charter is forfeited for non-payment of taxes or failure to file an annual report, the corporation is dissolved by operation of law).

existence has been terminated, ... [its] assets are automatically transferred to the corporation's directors, who become the trustees of the assets of the defunct corporation for purposes of liquidation." *Scott v. Seek Lane Venture, Inc.,* 91 Md.App. 668, 605 A.2d 942 (Md.1992) (holding that because defunct status of corporate entity was known, effort to give notice of foreclosure proceeding to directors-trustees was required).[4] Although CCD–SAT's corporate status was in forfeiture at the time the thirty-day notice requirement was triggered, Davis, as sole director of the corporation, stood in the shoes of the defunct corporation. We do not conclude that the District was required to send the thirty-day notice to Davis in her capacity as director of CCD–SAT; for one thing, the record does not disclose whether the District knew of CCD–SAT's forfeited status.[5] But what is of critical significance in this case is the representation, which Pratt has not disputed, that sole-director Davis has been the "registered agent [of CCD–SAT] since the formation of the corporation. She has remained the primary point of contact since that time."[6] Thus, any notice sent to CCD–SAT would have been sent to Davis, the director who became the trustee of its assets upon its forfeiture. Given these particular facts, we are unable to conclude that strict compliance with the statutory notice requirement was excused or that there was no constitutional infirmity in failure to send the statutorily-required thirty-day notice to CCD–SAT.[7]

Accordingly, we reverse the judgment of the trial court and remand for entry of an order setting aside the tax deed to appellee Pratt and for further proceedings consistent with this opinion.[8]

*So ordered.*

---

**4.** *See* also MD.CODE ANN., CORPS. & ASS'NS § 3–515(a) (2007 Repl.) ("When the charter of a Maryland corporation has been forfeited, until a court appoints a receiver, the directors of the corporation become the trustees of its assets for purposes of liquidation").

**5.** In addition, because there is no evidence that the District sent *any* written notice, we need not resolve here whether a timely written notice sent to the tax-roll address of a defunct corporation but not to its director(s) would be legally sufficient.

**6.** In addition, we note, Davis testified at her deposition that her address and CCD–SAT's is one and the same (although the context does not make entirely clear whether Davis was referring to the address of the CCD–SAT that is a party here or the address of a second corporation, also named CCD–SAT, that had a brief corporate existence).

**7.** To be clear, our reasoning is not that written notice to CCD–SAT was required because failure to give notice to CCD–SAT meant failure to give actual notice to Davis. *Cf. Jones v.*

*Grieg,* 829 A.2d 195, 199 (D.C.2003) ("[a]ctual notice of the expiration of the redemption period is not mandated by the statute or regulations," which instead mandate notice by certified or registered mail to the owner of record's last known address). Rather, we begin with a recognition that the mailing of a written notice to CCD–SAT as record owner of the property was statutorily required, and we conclude that the District's apparent failure to satisfy this requirement was neither saved from constitutional infirmity nor otherwise excused by CCD–SAT's forfeiture status because, on the facts of this case, the statutorily required notice would have accomplished procedural due process (to trustee Davis), which is the purpose of the statutory notice requirement.

**8.** *See* D.C.Code § 47–1308 (2001) ("if any conveyance made by the Mayor, of property sold for taxes, shall at any time be set aside by decree of any court as invalid, the party in whose favor the decree is rendered shall pay to the party holding such conveyance, his heirs or assigns, the amount paid for such

taxes and conveyances, together with interest at the rate of 6% per annum'').